Filed 2/20/26  P. v. Herrera CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>GUADALUPE LOPEZ HERRERA,<br><br>Defendant and Appellant. | F087295<br><br>(Super. Ct. Nos. 19CR-05080, CRL001123)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Merced County.  Carol K. Ash, Judge.

Carlo Andreani, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Darren K. Indermill and John W. Powell, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant and defendant Guadalupe Lopez Herrera appeals following his 2023 conviction for crimes committed in 2019. He claims, in relevant part, entitlement to relief from the judgment based on the erroneous excusal of a potential juror, in violation of Code of Civil Procedure section 231.7, subdivision (e).[1] As explained herein, we conclude the trial court erred when it overruled defendant's objection to the prosecutor's use of a peremptory challenge to excuse a prospective Hispanic juror who reported negative experiences with law enforcement and the criminal justice system, where the prosecutor did not overcome the presumptive invalidity of the challenge by clear and convincing evidence. (§ 231.7, subd. (e).) Reversal for this error is compelled under the statute. (*Id.*, subd. (j).) Therefore, we vacate defendant's judgment and remand for a new trial.

## BACKGROUND AND PROCEDURAL HISTORY

In September 2019, defendant fired shots into the rental house where his ex-partner and their children were living, broke inside, beat his ex-partner in the head with a gun, and then fled.[2] Several days later, law enforcement located defendant, but he evaded capture after shooting at two deputies and stealing a truck at gunpoint. The next day, law enforcement spotted the stolen truck and began pursuit. After the truck's tire was flattened with a spike strip, defendant stopped, dropped a gun and magazine out of the window, and drove off again. Officers thereafter succeeded in forcing the truck to stop and defendant was taken into custody.

In August 2023, defendant was convicted by jury of the attempted murder of his ex-partner, two counts of attempted murder of a peace officer, two counts of assault on a peace officer with a semiautomatic firearm and one count of assault with a semiautomatic

---

[1] All further undesignated statutory references are to the Code of Civil Procedure.

[2] Given our conclusion that the trial court committed error during jury selection, necessitating reversal and remand for a new trial, we only briefly summarize the facts underlying defendant's convictions.

firearm, carjacking, first degree burglary, willful infliction of corporal injury on the mother of his children, shooting at an inhabited dwelling, and stalking. (Pen. Code, §§ 664/187, subd. (a) [counts 1, 2, 7]; 245, subds. (b), (d)(2) [counts 3, 4, 8]; 215, subd. (a) [count 5]; 459 [count 6]; 273.5, subd. (a) [count 9]; 246 [count 11]; 646.9, subd. (b) [count 12].)[3] The jury also found true the firearm enhancement allegations. (Pen. Code, §§ 12022.53, subds. (b) [counts 5, 8], (c) [counts 1, 2, 7], 12022.5, subd. (a) [counts 3, 6, 9].)

In December 2023, the trial court sentenced defendant to two consecutive terms of seven years to life for the attempted murders of two peace officers and a consecutive term seven years for the attempted murder of his ex-partner, with three additional 20-year terms for use of a firearm; and to a consecutive term of one year eight months for carjacking, for an aggregate term of 82 years eight months to life.[4] Sentences on the remaining counts were imposed and stayed under Penal Code section 654.

On appeal, defendant advances two claims for relief. First, he claims the trial court erred in overruling his statutory objection to the excusal of a prospective Hispanic juror (Juror No. 7910) who reported negative experiences with law enforcement and the criminal justice system, and the excusal of the juror also violated his constitutional rights. Second, he claims that although the trial court instructed the jury on voluntary intoxication, the court failed to instruct sua sponte that evidence of defendant's

---

[3]    Three misdemeanor counts for violating a protective order were dismissed prior to the commencement of evidence; one felony count for making criminal threats was dismissed after the People rested; and the jury acquitted defendant of assault with a deadly weapon and the lesser included offense of simple assault based on a separate incident. (Pen. Code, §§ 273.6, subd. (a) [counts 14–16], 422 [count 10], 245, subd. (a)(1)/240 [count 13], 1118.1.)

[4]    The trial court struck the 10-year firearm enhancement attached to count 5, carjacking, given the overall length of defendant's sentence. (Pen. Code, § 1385.) Additionally, the court indicated its intent to impose a concurrent middle term of three years on count 12, stalking (Pen. Code, § 646.9), but the court did not separately pronounce the sentence as to count 12.

3.

intoxication was relevant to whether he knew two of the attempted murder victims were peace officers, in violation of his rights under state and federal law.

The People dispute any errors occurred.

As discussed herein, the prosecutor exercised a peremptory challenge to excuse a Hispanic male juror who reported he and his wife each had a negative experience with law enforcement and, relatedly, he had a negative experience with the criminal justice system. These reasons were presumptively invalid under section 231.7, subdivision (e), and required the prosecutor to "show by clear and convincing evidence that an objectively reasonable person would view the rationale as unrelated to a prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups, *and* that the reasons articulated bear on the prospective juror's ability to be fair and impartial in the case[.]" (*Ibid.*, italics added.) Neither the prosecutor nor the trial court addressed the presumptive invalidity of the peremptory challenge under section 231.7, subdivision (e), and the trial court instead appeared to evaluate defendant's objection under the rubric of *Batson/Wheeler*, finding the prosecutor did not act with discriminatory intent.[5] However, express terms of the ruling notwithstanding, even if we were to assume the court evaluated the objection based on the totality of the circumstances under section 231.7, subdivision (d), rather than under *Batson/Wheeler*, intentional discrimination is not the correct standard and the court did not first require the prosecutor to overcome the presumptive invalidity of the challenge under the more demanding standard set forth in section 231.7, subdivision (e). (*People v. Guzman* (2025) 115 Cal.App.5th 464, 475 (*Guzman*); *People v. Jimenez* (2024) 99 Cal.App.5th 534, 540 (*Jimenez*).)

---

[5] *Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*); *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*).

We may not impute to the trial court findings it did not make (§ 231.7, subd. (j)), but in this case, the record is devoid of *any* evidence that the prospective juror's negative experiences with law enforcement and the criminal justice system bore on his inability to be fair and impartial (*id.*, subd. (e)). Under these circumstances, the prosecutor did not overcome the presumptive invalidity of the peremptory challenge, the trial court erred in overruling defendant's objection, and section 231.7 compels reversal of the judgment and remand for a new trial. Given this disposition, defendant's claims of separate constitutional error and of instructional error are moot, and we do not reach them.

## DISCUSSION

### I. Legal Principles

"'Both the federal and state Constitutions prohibit any advocate's use of peremptory challenges to exclude prospective jurors based on race. [Citations.] Doing so violates both the equal protection clause of the United States Constitution and the right to trial by a jury drawn from a representative cross-section of the community under article I, section 16 of the California Constitution.'" (*People v. Parker* (2017) 2 Cal.5th 1184, 1210–1211, quoting *People v. Lenix* (2008) 44 Cal.4th 602, 612.) The United States Supreme Court has recognized "[t]he Fourteenth Amendment's mandate that race discrimination be eliminated from all official acts and proceedings of the State is most compelling in the judicial system." (*Powers v. Ohio* (1991) 499 U.S. 400, 415.) This is so because "[i]t is not only litigants who are harmed when the right to trial by impartial jury is abridged. Taints of discriminatory bias in jury selection—actual or perceived— erode confidence in the adjudicative process, undermining the public's trust in courts." (*People v. Gutierrez* (2017) 2 Cal.5th 1150, 1154 (*Gutierrez*), citing *Miller-El v. Dretke* (2005) 545 U.S. 231, 238 & *Powers v. Ohio, supra*, at p. 412.)

Constitutional *Batson/Wheeler* claims are subject to "a three-step framework. 'First, the defendant must make out a prima facie case "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." [Citation.] Second,

5.

once the defendant has made out a prima facie case, the "burden shifts to the State to explain adequately the racial exclusion" by offering permissible race-neutral justifications for the strikes.  [Citations.]  Third, "[i]f a race-neutral explanation is tendered, the trial court must then decide … whether the opponent of the strike has proved purposeful racial discrimination."'"  (*People v. Nadey* (2024) 16 Cal.5th 102, 124 quoting *Johnson v. California* (2005) 545 U.S. 162, 168 (*Johnson*).)  "'[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike'" (*Nadey, supra*, at p. 124, quoting *Purkett v. Elem* (1995) 514 U.S. 765, 768), and the moving party "must prove 'it was more likely than not' that a challenge was motivated by discrimination" (*Nadey, supra*, at p. 124, quoting *Johnson, supra*, at p. 170 & citing *People v. Armstrong* (2019) 6 Cal.5th 735, 766).

"Under the *Batson/Wheeler* test, the ultimate question for the trial court in ruling on an objection to a peremptory challenge is whether the party exercising the objection engaged in '*purposeful* discrimination.'"  (*Guzman, supra,* 115 Cal.App.5th at p. 475, italics added, quoting *Johnson, supra*, 545 U.S. at p. 168.)  "'Recognizing the limitations of the *Batson/Wheeler* inquiry, the Legislature enacted Assembly Bill No. 3070 (2019–2020 Reg. Sess.) … to add Code of Civil Procedure section 231.7, which creates new procedures for identifying unlawful discrimination in the use of peremptory challenges.' (*People v. Jaime* (2023) 91 Cal.App.5th 941, 943, fn. omitted (*Jaime*).)  The Legislature intended that the new law 'be broadly construed to further the purpose of eliminating the use of group stereotypes and discrimination, whether based on conscious or unconscious bias, in the exercise of peremptory challenges.'"  (*People v. Ortiz* (2023) 96 Cal.App.5th 768, 791–792 (*Ortiz*), quoting Stats. 2020, ch. 318, § 1, subd. (c); accord, *Guzman, supra*, at p. 471.)

"Section 231.7 prohibits the use of 'a peremptory challenge to remove a prospective juror on the basis of the prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or the perceived

membership of the prospective juror in any of those groups.' (§ 231.7, subd. (a).) If a party or the trial court objects to the use of a peremptory challenge, 'the party exercising the peremptory challenge shall state the reasons the peremptory challenge has been exercised.' (*Id.*, subd. (c).)" (*People v. Barnes* (2024) 107 Cal.App.5th 560, 577–578 (*Barnes*).)

If the reason for the exercise of the peremptory challenge is not presumptively invalid under section 231.7, subdivision (e) or subdivision (g), discussed next, subdivision (d) provides that the reason is to be "evaluated 'in light of the totality of the circumstances' to determine if 'there is a substantial likelihood that an objectively reasonable person,' who is aware that unconscious bias and purposeful discrimination have resulted in the unfair exclusion of potential jurors in California, would view membership or perceived membership in any of the protected groups as a factor in the use of the peremptory challenge." (*Barnes, supra*, 107 Cal.App.5th at p. 578, quoting § 231.7, subd. (d)(1), (2)(A).) "The court need not find purposeful discrimination to sustain the objection." (§ 231.7, subd. (d)(1).)

Subdivisions (e) and (g) of section 231.7 set forth specific reasons that are presumptively invalid. "'Each subdivision sets out a distinct process by which a court determines whether a presumptively invalid reason can be absolved of that presumption. (*Id.*, subds. (e), (f), (g)(2).)'" (*Barnes, supra*, 107 Cal.App.5th at p. 578, quoting *Ortiz, supra*, 96 Cal.App.5th at p. 793.) At issue in this case, "[e]xpressing a distrust of or having a negative experience with law enforcement or the criminal legal system" and "[h]aving a close relationship with people who have been stopped, arrested, or convicted of a crime" are presumptively invalid reasons for exercising a peremptory challenge under subdivision (e) of section 231.7. To overcome the presumptive invalidity of a peremptory challenge under subdivision (e), the prosecutor is required to "show by clear and convincing evidence that an objectively reasonable person would view the rationale as unrelated to a prospective juror's race, ethnicity, gender, gender identity, sexual

7.

orientation, national origin, or religious affiliation, or perceived membership in any of those groups, *and* that the reasons articulated bear on the prospective juror's ability to be fair and impartial in the case[.]" (*Ibid.*, italics added.) Within the meaning of subdivision (e), "'clear and convincing' refers to the degree of certainty the factfinder must have in determining whether the reasons given for the exercise of a peremptory challenge are unrelated to the prospective juror's cognizable group membership, bearing in mind conscious and unconscious bias. To determine that a presumption of invalidity has been overcome, the factfinder shall determine that it is highly probable that the reasons given for the exercise of a peremptory challenge are unrelated to conscious or unconscious bias and are instead specific to the juror and bear on that juror's ability to be fair and impartial in the case." (*Id.*, subd. (f).)

The trial court's denial of an objection under section 231.7 is reviewed "de novo, with the trial court's express factual findings reviewed for substantial evidence. The appellate court shall not impute to the trial court any findings, including findings of a prospective juror's demeanor, that the trial court did not expressly state on the record. The reviewing court shall consider only reasons actually given under subdivision (c) and shall not speculate as to or consider reasons that were not given to explain either the party's use of the peremptory challenge or the party's failure to challenge similarly situated jurors who are not members of the same cognizable group as the challenged juror, regardless of whether the moving party made a comparative analysis argument in the trial court. Should the appellate court determine that the objection was erroneously denied, that error shall be deemed prejudicial, the judgment shall be reversed, and the case remanded for a new trial." (*Id.*, subd. (j).)

## II. Proceedings in Trial Court

Juror No. 7910 was in the initial group of 18 prospective jurors selected for voir dire. He lived in Livingston and was employed as a warehouse lead, his wife worked at a clinic, and he had three children and no prior jury service.

8.

The prosecutor asked Juror No. 7910 if he had any reservations about voting guilty if the evidence established guilt in his view. After he stated he did not, the prosecutor noted his questionnaire indicated he had a case in the criminal justice system and he did not answer the question asking whether he thought he was treated fairly. He responded he thought he was innocent, and the case was dismissed pretrial based on lack of evidence. He did not think the process was fair because he was not the one who committed the crime he was charged with. Asked who was at fault, he stated officers with the Livingston Police Department and explained they saw that he did not do it but because he was there and did not run, he was the one charged. The prosecutor asked if there was anything about that experience that would be on his mind when he listened to officers testify in this case. He responded no. The prosecutor stated it would be his job to determine witness credibility and asked if anything about his negative experience with the police would impact how he viewed the evidence. He responded he would "look at the evidence and go from there." The prosecutor then asked if, prior to hearing testimony, he had any opinion on the credibility of the police. He answered, "Well, I think everybody should be credible or not credible even though … if you're not a police officer, if you're a civilian, it should be the same." The prosecutor asked if he tended to disbelieve police officers because he had a bad experience and he answered no.

The prosecutor then asked Juror No. 7910 if he thought the police sometimes abused their power and he said yes. Asked for specifics, he stated his wife was pulled over for her tinted car windows as an excuse and after she showed officers her license, they gave it back and told her to have a nice day. He also stated they asked another officer about that and were told the windows were legal, but could be used as an excuse. The prosecutor asked if he felt his wife was treated unfairly and he said yes. When the prosecutor asked if that would affect how he listened in this case, he said, "I mean not everybody's the same."

9.

Subsequently, the prosecutor questioned Juror No. 7910 about whether he held a supervisory position at work. He confirmed that he did and that the position involved reviewing subordinate employees. The prosecutor asked if that might affect how he listened to the evidence and deliberated with other jurors. He said he did not think so.

After three jurors were excused for cause, the prosecutor passed three times while the defense exercised peremptory challenges to excuse three potential jurors. The prosecutor then exercised her first peremptory challenge to excuse Juror No. 7910 and defense counsel requested to make an objection outside the presence of the jury.

Defense counsel expressly objected under section 231.7 and stated she believed the peremptory challenge was exercised on the basis that Juror No. 7910 was Hispanic. The trial court made the record that defendant appeared to be Hispanic based on his name and use of a Spanish interpreter, and that Juror No. 7910 also appeared to be Hispanic.

In response to the trial court's inquiry concerning her reasons, the prosecutor stated, "On the questionnaire the juror answered that he previously had a court case and the follow up question was whether—if I could find that questionnaire. It had to do with his impression of how he was treated, and he did not answer the question. He left it blank. [¶] Then when questioned about that in court, he explained that he felt that he was treated unfairly in that process. He thought that he was treated unfairly both by the police and during the Court process. [¶] The case was ultimately dismissed. And even though the district attorney dismissed the case, he felt that it was unfair that he had been charged. And so I think that—he stated a concern at least about the fairness of the criminal justice system. It was a highly personal experience.

"It's also concerning to me that he did not include that information in the written questionnaire, that he had to be questioned about it specifically. And his comments about law enforcement were not generally that he has a problem with law enforcement, but that he specifically feels that he's been mistreated and that his wife has been mistreated. And I have concerns about whether he could follow the instruction to judge the credibility of

law enforcement witnesses the same as any other witness, as well as a concern about whether he thinks that the Court process is just."

In response, defense counsel argued that racial profiling or a distrust in the system, being prosecuted even though innocent, and a general distrust of law enforcement were presumptively invalid reasons to exercise a peremptory challenge under subdivision (e) of section 231.7. The prosecutor replied, "I don't recall any conversation or any statements made about racial profiling. I understand the prong for expressing distrust of law enforcement, but I don't believe that the juror expressed a belief that law enforcement officers engage in racial profiling or that criminal laws have been enforced in a discriminatory manner that was not established by any of the questions that he answered."

The trial court stated, "I don't know if it would have to have been directly established. He did say he felt his wife had been unfairly pulled over because of tinted windows. Maybe that was my own interpretation of his response. Let me take a moment. I do have an analysis I need to look at. I usually have it in my trial folder. I can't find it right now. [¶] So I'll take a short break and consider it and come back." After a recess, the court overruled defendant's objection on the following grounds: "So the Court did determine that a prima facie case had been met based upon the facts set forth by the defense. And then [the prosecutor] did offer her reasons. And part of the things the Court considered as past preemptory challenges by the party, side by side comparison of jurors, remaining jurors not struck, the challenged parties, misrepresentations of the record when defending the strikes. This is the first preemptory challenge that [the prosecutor] has offered in this case.

"And the issue before the Court is whether there's a facial validity for the justification unless the discriminatory intent is inherent. Given that this is the first challenge that she's exercised and that [Juror No. 7910] did say he had been treated unfairly and felt his wife had been treated unfairly, I can't find her intent would be

11.

inherently discriminatory at this point since this is the first challenge that she's exercised, so I … deem that the reason is neutral.

"I think just at this point given the history that there's a very limited history of any improper challenges, or any challenges at all basically. And he did say he had been treated unfairly in the past. And I realize the factors that [defense counsel] put forth, but I just think at this point I don't have enough of a history or circumstances to find that [the] prosecutor was acting with a discriminatory intent in exercising her challenge, so I'm going to deny the objection. I'll go ahead and excuse that juror."

## III.     Analysis

Section 231.7 had been in effect for more than one and one-half years when the jury was selected in this case (*id.*, subd. (i)), and there is no dispute that the exercise of a peremptory challenge to excuse a potential juror who expressed "a distrust of or [had] a negative experience with law enforcement or the criminal legal system" or who had "a close relationship with people who have been stopped, arrested, or convicted of a crime" is presumptively invalid (*id.*, subd. (e)(1), (3)). Despite defense counsel's express objection on this ground, however, neither the prosecutor nor the court addressed the requirement that the prosecutor "show by clear and convincing evidence that an objectively reasonable person would view the rationale as unrelated to a prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups, *and* that the reasons articulated bear on the prospective juror's ability to be fair and impartial in the case[.]" (*Id.*, subd. (e), italics added.) The trial court's express findings that defendant made a prima facie showing; the prosecutor provided a facially valid, neutral reason for the exercise of the challenge; and the court was unable to find inherently discriminatory intent indicate the court addressed defendant's objection under the *Batson/Wheeler* framework. (*Gutierrez, supra*, 2 Cal.5th at pp. 1158–1159.) In any event, the court did not view the objection through the lens of subdivision (e) of section 231.7, as required.

Despite this record, the People rely on the decision in *Gonzalez* for the proposition that the prosecutor overcame the presumptive invalidity of her peremptory challenge by clear and convincing evidence (*People v. Gonzalez* (2024) 104 Cal.App.5th 1, 17–18 (*Gonzalez*)), and, therefore, the trial court did not err in overruling defendant's objection under the totality of the circumstances test in subdivision (d) of section 231.7 (*Gonzalez, supra*, at pp. 19–20). The facts in *Gonzalez* are readily distinguishable from the facts here, however.

In *Gonzalez*, the appellate court rejected the defendant's claim the trial court erred when it overruled his objection to the excusal of Juror No. 1589. (*Gonzalez, supra*, 104 Cal.App.5th at p. 5.) In that case, Juror No. 1589, a Black man, had a cousin who was shot and killed in a gang-related shooting, although his cousin was not a gang member. (*Id.* at pp. 9–10.) Juror No. 1589 was satisfied that the perpetrator was caught, convicted and imprisoned. (*Id.* at p. 10.) However, he was not satisfied with law enforcement's handling of the crime. (*Ibid.*) He reported his cousin was left on the ground for two hours before they came and checked on him, which frustrated the family, and, in his view, law enforcement improperly delayed investigating, tried to blame the family, and treated the family like they were gang members because of the neighborhood they lived in. (*Ibid.*) When the trial court asked if the experience would affect the prospective juror in that case, he was unsure, although he agreed he would try his best to listen to the evidence and be fair and impartial to both sides. (*Ibid.*)

Juror No. 1589 also reported a negative experience with law enforcement that occurred when he was 12 or 13 years old. (*Gonzalez, supra*, 104 Cal.App.5th at p. 10.) He was playing basketball with friends when a patrol car pulled up. (*Ibid.*) Officers made the children put their hands on the hot hood and then beat their hands with a flashlight when they moved their hands. (*Ibid.*) He expressly reported the experience made him "'kind of … bitter.'" (*Ibid.*) He again responded he did not know when asked

13.

if he would hold that experience against officers who testified in the case, but he confirmed he would be able to follow the jury instruction on assessing credibility. (*Ibid.*)

After unsuccessfully attempting to have Juror No. 1589 excused for cause, the prosecutor exercised a peremptory challenge to excuse him. (*Gonzalez, supra*, 104 Cal.App.5th at p. 11.) During argument, the prosecutor explained, in part, that the prospective juror twice responded that he was not sure he could be fair to law enforcement based on his experience. (*Id.* at p. 12.) The trial court found the prosecutor met the clear and convincing evidence standard under section 231.7, subdivision (e), and overruled the defense objection. (*Gonzalez, supra*, at p. 12.)

On review, the appellate court found no error. (*Gonzalez, supra*, 104 Cal.App.5th at p. 5.) The court explained, "Juror No. 1589's views appeared to be the direct result of how law enforcement had treated him personally, both in connection with his cousin's murder and when officers stopped him as a child. There was thus reason to believe Juror No. 1589's views arising from his past experiences were related to his race." (*Id.* at p. 17.) However, "'[a]n objectively reasonable person would view the prosecutor's challenge of Juror Number [1589] due to [his] feelings on law enforcement as related to [his] ability to be fair based on [his] repeated acknowledgement that [he] would have difficulty setting aside [his] bias and being fair.' (*Jimenez, supra*, 99 Cal.App.5th at p. 544.) While a prospective juror's negative experience with law enforcement may be inextricably related to that juror's race, the focus of section 231.7 is on race as a factor in the use of the peremptory challenge. In view of his multiple uncertain and noncommittal responses regarding impartiality, the trial court properly found it highly probable the prosecutor's challenge was unrelated to conscious or unconscious bias and was instead specific to Juror No. 1589 and bore on his ability to be fair and impartial. In other words, the clear and convincing standard was satisfied." (*Id.* at pp. 17–18; see *Jimenez, supra*, 99 Cal.App.5th at p. 544 [presumption of invalidity overcome where juror who expressed

14.

belief of racial bias in law enforcement repeatedly acknowledged it would be difficult to set aside her bias against law enforcement and fairly consider their testimony].)

This case involves a prospective juror who reported he and his wife each had a negative experience with law enforcement, and, based on his innocence, he did not feel the criminal justice system was fair even though the case against him was dismissed. In contrast with *Gonzalez*, however, Juror No. 7910 did not express that he was embittered by his experiences and, critically, he did not express any uncertainly over whether he could be fair to law enforcement. To the contrary, he stated repeatedly he could be fair.

The People point out because Juror No. 7910 believed he and his wife had been mistreated by law enforcement, the prosecutor was concerned about his ability to follow the court's instruction on assessing witness credibility. They state there was evidence here that bore on Juror No. 7910's ability to be fair and impartial and argue, "The prosecutor's stated reasons for exercising the peremptory challenge against Prospective Juror No. 7910 involved the prospective juror's ability to be fair and impartial in the case. The reasons articulated by the prosecutor were unrelated to conscious or unconscious bias. The stated reasons were specific to Prospective Juror No. 7910 and were highly relevant to his ability to be fair and impartial in the case. Thus, as in *Gonzalez*, the prosecutor's stated reasons for exercising the peremptory challenge were sufficient to rebut any presumption of invalidity under section 231.7, subdivision (e)(1) of the Code of Civil Procedure."

We have explained why *Gonzalez* is inapt, and the statute prohibits this court from imputing "any findings … that the trial court did not expressly state on the record." (§ 231.7, subd. (j).) Thus, we are limited to considering "only reasons actually given under subdivision (c) and shall not speculate as to or consider reasons that were not given to explain either the party's use of the peremptory challenge or the party's failure to challenge similarly situated jurors who are not members of the same cognizable group as the challenged juror, regardless of whether the moving party made a comparative analysis

15.

argument in the trial court." (*Ibid.*)[6] Here, neither the prosecutor nor the trial court addressed how the reasons articulated by the prosecutor bore on Juror No. 7910's ability

---

[6] We note a split of authority in the Court of Appeal, Second District, Division Six, concerning the extent to which the trial court is required to make an express ruling. In *Uriostegui*, the majority reversed the judgment and remanded the matter where the trial court failed to make the specific findings required to overcome presumptively invalid reasons for exercising a peremptory challenge under subdivision (g) of section 231.7. (*People v. Uriostegui* (2024) 101 Cal.App.5th 271, 281 (maj. opn.).) One justice dissented (*id.* at pp. 282–284 (dis. opn. of Gilbert, P. J.)), and subsequently, in *SanMiguel*, the majority affirmed the judgment where the prosecutor exercised a peremptory challenge to excuse a juror on the presumptively invalid basis of inattention and the trial court confirmed the behavior, but the prosecutor failed to explain why the behavior mattered to the case, in accordance with section 231.7, subdivision (g). (*People v. SanMiguel* (2024) 105 Cal.App.5th 880, 890–891 (maj. opn.), review granted Dec. 18, 2024, S287786 (*SanMiguel*).) The majority opined the potential juror's "lack of attention alone was a sufficient reason for his dismissal" (*id.* at p. 891), and overcame the presumption of invalidity under section 231.7, subdivision (g)(2) (*SanMiguel, supra*, at p. 891, review granted). One justice dissented on that point, explaining, "Because the prosecutor failed to explain why [the juror's] behavior mattered in this case, I must treat as conclusive the presumption that he was excused for invalid, discriminatory reasons." (*Id.* at p. 895 (conc. & dis. opn. of Cody, J.), review granted.) Subsequently, the majority in *Garcia* expressed disapproval of *Uriostegui*. (*People v. Garcia* (2025) 114 Cal.App.5th 1154, 1165, review granted Dec. 30, 2025, S293973.) In a concurring opinion, Justice Cody distinguished *Uriostegui* on the ground that it involved presumptively invalid peremptory challenges that were not rebutted while the demeanor-based challenge in *Garcia* was rebutted in compliance with the statute. (*Garcia, supra*, at pp. 1167–1169 (conc. opn. of Cody, J.), review granted.) Additionally, the concurring opinion disagreed with the characterization of *Uriostegui* as requiring "'verbatim' recitation of the statute" (*Garcia, supra*, at p. 1168 (conc. opn. of Cody, J.), review granted). The concurring opinion stated that instead, *Uriostegui* "recognizes that trial courts must make certain findings to overcome a presumption of invalidity. [Citation.] Those findings need not take a particular form. But they must exist, and appellate courts cannot impute them. [Citation.] A trial court's general awareness of the statute and implicit bias is insufficient." (*Garcia, supra*, at p. 1169 (conc. opn. of Cody, J.), review granted.)

To date, no other published decision has followed the view articulated in *SanMiguel* and *Garcia* that an express finding is not required under subdivision (e) or subdivision (g)(2) of section 231.7, notwithstanding the statutory language setting forth the requirements for overcoming a presumptively invalid basis for exercising a peremptory challenge and prohibiting imputing findings to the trial court on review. (*Garcia, supra*, 114 Cal.App.5th at p. 1165 (maj. opn.), review granted; *SanMiguel, supra*, 105 Cal.App.5th at pp. 890–891 ( maj. opn.), review granted.) In this case, the People do not advance that argument, but in any event, there is *no* evidence in the record that Juror No. 7910 was unable to be fair and impartial, or to follow the jury instruction on assessing the credibility of witnesses, due to his and his wife's experiences with law enforcement and the criminal justice system. Moreover, neither the prosecutor nor the

to be fair and impartial in this case.  The People's reasoning is circular in that they cite to the presumptively invalid basis for the challenge as evidence of the juror's inability to be fair and impartial, and they fail to point to anything additional that would support a showing, by clear and convincing evidence, that Juror No. 7910 could not be fair and impartial.  The Court of Appeal in *Jaime* rejected this reasoning, explaining, "Allowing a party to use the presumptively invalid reasons to overcome the presumption would render section 231.7, subdivision (e) meaningless."  (*People v. Jaime* (2023) 91 Cal.App.5th 941, 947 (*Jaime*).)

With respect to the prosecutor's assertion that Juror No. 7910 failed to answer a question on the jury questionnaire and she was also concerned whether he could follow the jury instruction on assessing witness credibility, either concern could arguably present an independent basis to exercise a peremptory challenge, depending on how the prosecution explains the basis for the challenge.  (See *Ortiz, supra*, 96 Cal.App.5th at p. 799 ["the prosecutor's actual reasons for the peremptory challenge are what matters"].)  In this case, however, the one question Juror No. 7910 left blank related to how he felt he was treated by the criminal justice system and the prosecutor's concern whether he would follow the jury instruction on assessing witness credibility also directly related to his report that he and his wife were treated unfairly by law enforcement.  Neither stated concern was supported by any evidence that Juror No. 7910 was confused or acted deceptively, or that he expressed any hesitation in evaluating the testimony of law enforcement officers fairly or following jury instructions.  (See *Jimenez, supra*, 99 Cal.App.5th at p. 544 [juror repeatedly acknowledged she would have difficult time "setting aside her bias against law enforcement officers to fairly consider their testimony, despite her initial statements she could be fair" and "because of her views on law enforcement and race, she would have a difficult time fairly evaluating the testimony of

---

trial court even purported to address the clear and convincing evidence standard for overcoming a presumptively invalid basis for excusing the juror under subdivision (e) of section 231.7.

law enforcement witnesses and might have an 'implicit bias' against the officers without realizing" it]; *Ortiz, supra*, 96 Cal.App.5th at p. 805 [juror's "unclear answers, failure to answer, confusion, reluctance, and evasiveness did not allow [the prosecutor] to determine his views and impartiality, and it was not for lack of her trying," which was sufficient to overcome the presumptive invalidity of the reasons under § 231.7, subd. (g)(2)].)

In sum, the prosecutor's exercise of a peremptory challenge to excuse Juror No. 7910 based on his negative experience with law enforcement and the criminal justice system was presumptively invalid.  (§ 231.7, subd. (e)(1), (3).)  The prosecutor did not attempt to make a showing, by clear and convincing evidence, "that an objectively reasonable person would view the rationale as unrelated to a prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups, *and that the reasons articulated bear on the prospective juror's ability to be fair and impartial in the case.*" (*Id.*, subd. (e), italics added.)  Nor did the trial court purport to find that the prosecutor made the requisite showing under section 231.7, subdivision (e).  We cannot impute to the trial court findings it did not make, and it is clear from the record that neither the prosecutor nor the court was focused on subdivision (e) or section 231.7.  The record indicates the trial court considered defendant's objection through the lens of *Batson/Wheeler*, but even if we were to assume the court was focused on the totality of the circumstances under subdivision (d) of the statute and simply misspoke, this was error where the presumptive invalidity of the prosecutor's peremptory challenge was not overcome in accordance with subdivision (e).  Therefore, the trial court erred in overruling the defense objection and, in this circumstance, the statute compels reversal. (§ 231.7, subd. (j); *Barnes, supra*, 107 Cal.App.5th at p. 583; *Jaime, supra*, 91 Cal.App.5th at p. 947.)

18.

## DISPOSITION

The judgment is reversed and this matter is remanded for a new trial.


                                                        MEEHAN, J.

WE CONCUR:


HILL, P. J.


HARRELL, J.